## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DONALD R. CROMER,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:13-cv-02630** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **CAROLYN W. COLVIN** | : | |
| **COMMISSIONER** | : | |
| **OF SOCIAL SECURITY** | : | |
| **Defendant** | : | |

### MEMORANDUM

Before the Court is Plaintiff Donald R. Cromer's complaint, wherein he requests review of the Social Security Commissioner's decision denying his disability insurance benefits and supplemental security income payments.  (Doc. No. 1.)  The motion has been briefed, and on June 25, 2014, the Court heard oral argument on Plaintiff's complaint.  (Doc. No. 14.)  For the reasons that follow, the Court will remand the case to the Commissioner for further proceedings.

## I.    BACKGROUND

On October 7, 2010, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits.  (Doc. No. 1 ¶ 5.)  Plaintiff also protectively filed a Title XVI application for supplemental security income.  (Id.)  Both applications were denied on February 14, 2011.  (Id. ¶ 6.)  Plaintiff then requested a hearing, which took place before Administrative Law Judge ("ALJ") Sridhar Boini on January 10, 2012.  (Id. ¶ 6.)  On May 24, 2012, the ALJ issued a decision denying Plaintiff's claim.  (Id. ¶ 7.)  Plaintiff filed a timely appeal to the Appeals Council on July 5, 2012, and on September 10, 2013, the Appeals Council denied Plaintiff's request for review of the ALJ's decision.  (Id. ¶¶ 8-9.)  The ALJ decision of May 24, 2012, is thus the final decision of the Commissioner and the Social Security

Administration.  (Id. ¶ 10.)

On October 24, 2012, Plaintiff filed a complaint in this Court appealing the Commissioner's decision.  (Id.)  Plaintiff argues that the ALJ and Appeals Council erred by (1) failing to give proper weight to the opinions of treating and examining physicians, and (2) failing to account for all of Plaintiff's disabling conditions in formulating hypothetical questions in the course of his residual functional capacity analysis.  (Doc. No. 12 at 10, 13.)

## II.    STANDARD OF REVIEW

A trial court has plenary review of all legal issues decided by the Commissioner.  Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 91 (3d Cir. 2007).  The trial court's review of any findings of fact, however, is limited to whether those findings are supported by "substantial evidence." Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).  The substantial evidence standard is highly deferential, and is satisfied with "more than a mere scintilla" of evidence.  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (internal citation omitted).  "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."  Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).  Substantial evidence "does not mean a large or considerable amount of evidence," but rather "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quotation omitted).  Substantial evidence exists only "in relationship to all the other evidence in the record," see Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981), and therefore a court reviewing the Commissioner's decision must scrutinize the record as a whole, including whether the Commissioner adequately developed the record.  Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

To receive disability benefits, a plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medical determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process when evaluating disability insurance claims. 20 C.F.R. § 404.1520; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant, first, is engaging in substantial gainful activity; second, has an impairment that is severe or a combination of impairments that is severe; third, has an impairment or combination of impairments that meets or equals the requirements of a listed impairment; fourth, has the residual functional capacity to return to his or her past work; and, if not, fifth, whether he or she can perform other work in the national or regional economy. Id. For the purposes of this determination, residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See SSR 96-8p, 61 FR 34474 (July 2, 1996). The residual functional capacity assessment must include a discussion of the individual's abilities. Id.; 20 C.F.R. § 404.1545; see Hartranft v. Apfel, 181 F.3d 358, 359 n.1 (3d Cir. 1999) (noting

3

that residual functional capacity is "defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)").

## III.     DISCUSSION

At the first step of the sequential evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 1, 2006, the alleged onset date.  (Doc. No. 9-2 at 13.)  At step two, the ALJ determined that Plaintiff had the severe impairments of multiple sclerosis ("MS") and depression.  (Id.)  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (Id. at 15.)  At step four, the ALJ determined that Plaintiff had the residual functional capacity to perform a limited range of sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) with the following exceptions: Plaintiff is limited to lifting and carrying 10 pounds occasionally and 5 pounds frequently and would not be able to meet sedentary level requirements for sitting and standing; would not be required to ascend ladders, scaffolds and ropes except in an emergency; could occasionally climb ramps and stairs; could occasionally reach overhead; could reach laterally without deficits; could not operate foot controls; is limited to fingering and fine manipulation bilaterally on a frequent basis; could not have exposure to extreme heat on a concentrated basis; could not perform work involving unprotected heights and dangerous, moving machinery because of balance issues; could not work at a high production pace due to weakness and fatigue; could not bend to the floor and below the knees more than occasionally; is limited to only frequent bending below the waist; could stop or crouch occasionally; could kneel and crawl only for emergency purposes; and would need to work in a work setting that would allow indoor access to a restroom.  (Id. at

16-17.)  At step five, the ALJ determined that Plaintiff is unable to perform any past relevant work.  (Id. at 22.)

Plaintiff argues that the Administrative Law Judge and Appeals Council erred by failing to give proper weight to the opinions of treating and examining physicians, and that the Administrative Law Judge further erred by failing to incorporate all of Plaintiff's disabling conditions in formulating hypothetical questions, which form the basis for the ALJ's conclusion regarding Plaintiff's residual functionality.  (Doc. No. 12 at 10, 13.)

### A.      Opinions of Plaintiff's treating and examining physicians

Plaintiff first argues that both the ALJ and the Appeals Council failed to give proper weight to the opinions of Plaintiff's treating and examining physicians.  (Id. at 12.)  Both Plaintiff's treating primary care physician, Dr. Raymond Joseph,  and treating neurologist, Dr. Douglas Nathanson, submitted their evidence indicating that Plaintiff was disabled from MS as of June 19, 2010 to the Social Security Administration too late to be considered by the ALJ. (Doc. Nos. 9-14, 9-15.)  However, the evidence from Drs. Joseph and Nathanson was accepted by the Appeals Council.  (Doc. No. 9-1 at 3.)  Despite accepting the evidence from Drs. Joseph and Nathanson, the Appeals Council summarily denied Plaintiff's request for review of the ALJ's decision.  (Doc. No. 9-2.)

In determining whether to grant a claimant's request for review of an ALJ's decision, the Appeals council considers whether it has received "new and material evidence," that renders "the [ALJ's] decision . . . contrary to the weight of all the evidence now in record."  (Doc. No. 9-2 at 2 (citing 20 C.F.R. § 404.970(b).)  The Appeals Council must then "evaluate the entire record including the new and material evidence submitted."  20 C.F.R. § 404.970(b).  However, the

Appeals Council need only grant review if it finds that the ALJ's decision "is contrary to the weight of the evidence currently of record." Id.

Where an Appeals Council has accepted new evidence into the record, but has nonetheless denied review, district courts may not consider that "new evidence" in evaluating whether the ALJ's decision was based on substantial evidence. Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001). Rather, "when the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ (Sentence Six Review)." Id. Thus, because Drs. Joseph and Nathanson did not submit their reports in time to be considered by the ALJ, the Appeals Council subsequently denied review, and Plaintiff does not offer a "good cause" argument as to why the reports were not presented to the ALJ, this Court is prohibited from considering the most recent reports of Drs. Joseph and Nathanson. See id. Accordingly, the Court cannot find that the ALJ's decision was not based on substantial evidence because it discounted the reports of Drs. Joseph and Nathanson.

Plaintiff next argues that the ALJ failed to give proper weight to the opinion of Dr. Lisa Costaris, who examined Plaintiff on January 15, 2011 at the request of the Social Security Administration. (Doc. No. 12 at 5.) Plaintiff contends that the ALJ's finding that "Dr. Costaris concluded that the claimant could perform a range of sedentary work . . ." is inaccurate, because Dr. Costaris limited Plaintiff's lifting and carrying ability to two to three pounds, whereas according to Plaintiff, the minimum capability required for the full range of sedentary work is lifting and carrying ten pounds occasionally. (See id. at 10; Doc. No. 9-2 at 18; Doc. No. 9-11 at 26.) Plaintiff asserts that "[t]he ALJ completely fails to address the fact that the limitations in

6

lifting and carrying imposed by Dr. Costaris would preclude the Plaintiff from sedentary work, or any other kind of work." (Doc. No. 12 at 11.) The ALJ describes Dr. Costaris' findings with some depth, but he makes no mention of the lifting restrictions that she imposed. (Doc. No. 9-2 at 18.) The ALJ specifically addresses many of Dr. Costaris' other particular findings, including her finding that Plaintiff was limited in pushing and pulling, her determinations that Plaintiff could stand and walk for one to two hours in an eight hour workday, and that Plaintiff was limited in reaching, handling, fingering, feeling, and continence. (Id.) Further, the ALJ writes,

> The undersigned affords great weight to Dr. Costaris' foregoing opinions with the exception of her opinions as to kneeling, which the undersigned affords less weight in viewing the evidence in a light favorable to the claimant . . . . [T]he residual functional capacity specifically includes Dr. Costaris' above-discussed opinions as to pushing and pulling, reaching, fingering, fine manipulation, and continence. As for Dr. Costaris' remaining opinions that the claimant could not be exposed to nearly all environmental conditions and could never climb, these opinions are given little weight because they do no provide guidance with respect to the claimant's degree of limitation.

(Id. at 18-19.)

The ALJ treats the opinions of other medical experts with less depth, and he compares the other experts with Dr. Costaris, using the restrictiveness of her findings as a benchmark for the other experts' reliability. (See id. at 19-20.) In doing so, the ALJ affords the findings of government medical consultants Drs. Mary Ryczak and Lee Besen great weight, in part because those opinions assess the same or less restrictive limitations on Plaintiff's ability to work as Dr. Costaris' opinion. (Id.)

An ALJ has a responsibility to consider all medical evidence, and the ALJ must "give some reason" for rejecting evidence not credited. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). The ALJ is empowered to choose between the opinions of conflicting experts, but such determinations may not be made "for no reason or for the wrong reason." Id. (quoting Mason v.

Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).  This obligation exists so that subsequent courts

reviewing the Commissioner's decisions may judge whether or not substantial evidence supports

an ALJ determination.  Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981).  An ALJ may not

substitute his or her own medical judgment for that of a medical expert.  Garcia v. Comm'r of

Soc. Sec., 94 F. App'x 935, 940 (3d Cir. 2004) ("The ALJ cannot . . . disregard [a] medical

opinion based solely on his own amorphous impressions, gleaned from the record and from his

evaluation of the claimant's credibility.") (citations omitted); Morales v. Apfel, 225 F.3d 310,

318 (3d Cir. 2000); Dennis v. Heckler, 756 F.2d 971, 976 (3d Cir. 1985).  The Court finds that

the ALJ acted improperly by rejecting the lifting and carrying restriction opinion from Dr.

Costaris without providing any explanation and without any obvious support from the record.  In

the ultimate residual functional capacity assigned to Plaintiff, the ALJ writes that Plaintiff "is

limited to lifting and carrying 10 pounds occasionally and 5 pounds frequently and would be

able to meet sedentary level requirements for sitting and standing."  (Doc. No. 9-2 at 16.)  As

stated above, Dr. Costaris determined that Plaintiff could only lift two or three pounds, and that

he could do so only occasionally.  (Doc. No. 9-11 at 26.)  Dr. Ryczak, the only other expert

whose opinions were afforded "great weight" to also address lifting and carrying limitations,

opined that Plaintiff could "[f]requently lift and/or carry" ten pounds, and that he could

"occasionally lift and/or carry" twenty pounds.  (Doc. No. 9-11 at 44.)  Without providing a

justification for doing so, the ALJ decided that Plaintiff could lift five pounds frequently and ten

pounds occasionally: a determination that comports with neither physician's report.  "Although

the ALJ may have had good intentions in effectively splitting the difference between medical

opinions, he did not have the authority to do so, and his decision in this regard is not supported

by substantial evidence as understood in the Third Circuit." <u>Cordova v. Barnhart</u>, No. 01-2323,

2002 WL 1340385, at *5 (E.D. Pa. June 19, 2002).  The discrepancy is more marked than would

otherwise be the case, because the ALJ so thoroughly explained his treatment of Dr. Costaris'

other opinions.  Accordingly, the Court will remand this case to the ALJ for further

consideration of all evidence, consistent with this memorandum.  On remand, the ALJ should

reconsider the proper weight to be given to the opinions of all medical experts and provide

reasons for all findings.

**B.      Residual functional capacity determination**

Plaintiff next argues that the hypothetical questions the ALJ posed to the vocational

expert did not account for all of Plaintiff's disabling conditions.[1]  (Doc. No. 12 at 13.)

According to Plaintiff, the ALJ failed to appropriately consider Plaintiff's lifting and carrying

restrictions, Crohn's disease-related limitations, and upper extremity limitations in formulating

his hypothetical questions.  (<u>Id.</u> at 13-14.)  The ALJ posed four questions to the vocational expert

at the hearing.  (Doc No. 9-2 at 72-75.)  In the first, the ALJ provided a limitation in lifting and

carrying to ten pounds occasionally and five pounds frequently, but provided full abilities in

terms of sitting, standing, and walking up to the amount necessary to perform sedentary work.[2]

---

[1] It is standard practice in a social security disability hearing for the ALJ to pose
hypothetical scenarios approximating a claimant's impairments to a vocational expert, who then
evaluates these limitations and gives examples of occupations that an individual with those
hypothetical limitations could still perform, if any exist.  <u>See</u> 20 C.F.R. § 404.1560.

[2] In this question, the ALJ also provided other limitations, including that the hypothetical
individual could only reach above his head occasionally, that he could not be exposed to
concentrated extreme heat, that he could not work at unprotected heights or around dangerous
machinery due to balance limitations, that he could only work at a moderate production pace,
and that the individual would be limited in terms of bending and crouching.  (Doc. No. 9-2 at 72-
73.)

(<u>Id.</u> at 72-73.)  The vocational expert responded that this hypothetical individual could perform at least three jobs in the national and regional economy, listing as examples "assembler of small products" and "telephone receptionist/greeter."  (<u>Id.</u> at 73-74.)  In the second question, the ALJ added to his initial hypothetical, inserting the necessity of reasonable access to an indoor restroom; the vocational expert indicated that the hypothetical individual's ability to work would be unaffected by this limitation.  (<u>Id.</u> at 74.)  In the third question, the ALJ added that this hypothetical individual would be absent from work more than 10% of the time due to his disability; the vocational expert testified that the most recent hypothetical individual could not work any job at all.  (<u>Id.</u>)  Finally, the ALJ described a new hypothetical individual who required normal access to a restroom, but this time the hypothetical individual had serious limitations using his right upper extremity from his shoulder to his finger tips.  (<u>Id.</u> at 73-74.)  When the ALJ asked if this new individual could work as an "assembler of small products" or a "telephone receptionist/greeter," the vocational expert replied that the individual could not.  (<u>Id.</u> at 74.)

In his ultimate residual functional capacity determination, the ALJ concludes that Plaintiff lacks the ability to perform the full range of sedentary work, assigning a list of limitations consistent with his first and second hypothetical questions.  (<u>Id.</u> at 16-17.)  However, he offers examples of jobs that Plaintiff could still work given his impairments; these examples are drawn directly from the vocational expert's testimony: "assembler of small products," "telephone receptionist/greeter," and cashier.  (<u>Id.</u> at 23.)  The vocational expert testified at Plaintiff's hearing that "assembler of small products" was classified as sedentary, and he also testified that his statements comported with the <u>Dictionary of Occupational Titles</u> ("DOT"), an authoritative publication by the Department of Labor.  (<u>Id.</u> at 26-28); <u>see also</u> SSR 00-4p, 2000

WL 1898704 at *2 (Dec. 4, 2000).  However, the vocational expert was incorrect.  The Dictionary of Occupational Titles does not define "assembler of small products" as sedentary, but rather as a "light" exertional occupation requiring lifting or carrying up twenty pounds occasionally, and up to ten pounds frequently.  United States Dep't of Labor, Dictionary of Occupational Titles §§ 706.684-022, 739-687-030 (4th Ed. 1991), 1991 WL 67050.  When the ALJ describes jobs Plaintiff can still perform, he uses the DOT classification of "light," for small products assembler, rather than the vocational expert's classification of the job as "sedentary." (Doc. No. 9-2 at 22.)  In doing so, the ALJ implicitly recognizes that the DOT and the vocational expert are in conflict.  In addition, "assembler of small products" is by far the most accessible of the three vocations announced by the ALJ, with 700 positions in the local economy, more than the combined number of cashiers and receptionists.  (Id. at 23.)

According to the Social Security Administration, "[w]hen vocational evidence provided by a [vocational expert] is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the [vocational expert's] evidence to support a determination or decision that the individual is or is not disabled."  SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000).  Further, the finder of fact has the affirmative duty to inquire as to any conflicts between a vocational expert's testimony and the DOT, and the ALJ "must explain the resolution of the conflict irrespective of how the conflict was identified."  Id. at **2-4.  The ALJ accepted the vocational expert's testimony that assembler of small products was a "sedentary" occupation, while he follows the DOT definition and describes that vocation as a "light" exertional vocation in his own decision.  As such, the Court finds that the ALJ failed to explicitly reconcile the conflicting definitions from the vocational expert and the DOT and will

order remand on this basis.

Moreover, where an ALJ determines that an individual is unable to perform the full range of vocations within the "sedentary" category, the occupational base is "eroded," and an ALJ is required to list specific vocations (e.g., cashier) within the sedentary category that a claimant may still perform given his or her impairment.  SSR 96-9p, 1996 WL 374185, at *5 (July 2, 1996).  The ALJ purports to comply with SSR 96-9p when he lists jobs that Plaintiff could theoretically still perform: small products assembler, receptionist, and cashier.  (Doc. No. 9-2 at 23.) ("Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.")  However, the ALJ determined previously that Plaintiff could not lift more than ten pounds, (Doc. No. 9-2 at 16), while the DOT requires an individual in this role to lift up to twenty pounds.  United States Dep't of Labor, Dictionary of Occupational Titles §§ 706.684-022, 739-687-030 (4th Ed. 1991), 1991 WL 67050.  The ALJ listed the vocation of small products assembler as available to Plaintiff, however by the ALJ's own determination, Plaintiff is unable to perform that occupation.  As such, the Court finds that the ALJ failed to identify sufficient examples of work that Plaintiff could perform given his impairments and will also order remand on this basis.

Accordingly, the Court will remand to the ALJ for further consideration of the evidence, consistent with this memorandum.  On remand, the ALJ should properly consider Plaintiff's limitations when identifying vocations that he may still perform, if any are found to exist.  An order consistent with this memorandum follows.